NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3442
_____

UNITED STATES OF AMERICA

v.

BERNARD M. PARKER,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-15-cr-0253-001)
District Judge:  Hon. Reggie B. Walton
_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2019

Before:  JORDAN, BIBAS, and MATEY, *Circuit Judges.*

(Filed: June 7, 2019)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Bernard Parker appeals the judgment of conviction and sentence imposed on him by the District Court. We will affirm.

## I.  BACKGROUND

From 2006 to 2014, Parker worked as a licensed financial advisor at Edward Jones, an investment company. When the market declined in 2008, so did Parker's income from Edward Jones. His solution was to continue working at Edward Jones while also soliciting his long-time friends, neighbors, and existing and new clients to invest with him through his personal investment company, Parker Financial Services ("PFS"). He promised his investors high rates of return and assured them they could get their principal investment back. Sixteen investors entrusted him with approximately $1.2 million.

Sadly, Parker invested only a fraction of it. Instead, he used nearly all of the money to pay for personal expenses, including remodeling his house. When the time came to pay a return on the investments, Parker resorted to a classic Ponzi scheme, soliciting more investors and using their money to pay his earlier investors. He assured his investors that all was well with their money, while actually using it to fund his lifestyle. He never told his accountant about PFS or any of the money he was taking from his investors. Nor did he disclose his activities to Edward Jones.

Parker's conduct eventually came to light, and he was indicted on one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), one count of mail fraud,

2

in violation of 18 U.S.C. § 1341, and four counts of tax fraud, in violation of 26 U.S.C. § 7206(1). He pleaded not guilty and the case proceeded to trial.

After the second day of trial, a juror reported that another juror, Juror 2, had made comments about the case, saying it was "pretty cut and dry" and that the jury had "heard enough already to be able to make a decision." (App. at 592.) The juror who reported those remarks thought other jurors might have also heard them. The next morning, the District Court questioned each juror individually and also allowed the parties to ask questions. The Court asked each juror what, if anything, he or she had overheard and, if the juror had overheard Juror 2's comments, whether the comments would impact the juror's ability to "keep an open mind" until the close of evidence. (*E.g.*, App. at 595.) In total, five jurors reported overhearing Juror 2's comments, but they all affirmed that the comments would not influence their impartiality. Juror 2 denied making any comments about the case.

With the parties' consent, the Court dismissed Juror 2 and seated an alternate juror. In addition, at Parker's request, the Court instructed the jury that it was not to speculate about why Juror 2 was dismissed or consider the dismissal when deciding the case and to "keep an open mind" until all the evidence had been presented. (App. at 616.) Parker moved for a mistrial, arguing that the entire jury had been tainted by Juror 2's comments. That motion was denied.

Trial proceeded without incident until the government's closing argument. In closing, the prosecutor referenced trial testimony about how Parker – the weekend before trial began – paid back two of the investors who were set to testify against him. The

3

prosecutor asked the jury to consider why those two investors had gotten paid back when no others had. Parker objected that doing so insinuated bribery and constituted prosecutorial misconduct. The Court overruled the objection.

After two days of deliberations, the jury returned a verdict of guilty on all six counts. Parker moved for judgment of acquittal based on insufficiency of the evidence as to his mental state. That motion and Parker's renewal of it were denied.

The case proceeded to sentencing. Parker faced a guidelines sentencing range of 87 to 108 months' imprisonment. He argued that a below-guidelines sentence was warranted and requested a downward variance. The government requested a within-guidelines sentence. After considering the factors set forth in 18 U.S.C. § 3553(a), the District Court imposed a sentence of 87 months' imprisonment. It explained that "an in-Guideline sentence [was] appropriate[,]" but continued that, given the good-time credit and halfway house time Parker may receive, he would likely only spend "a little more than five years in prison[,]" which the Court viewed as "appropriate[.]" (App. at 1120-21.) Parker timely appealed.

II. **DISCUSSION**[1]

Parker presses four claims on appeal. First, he contends that the District Court abused its discretion by denying his motion for a mistrial based on juror misconduct. He has two arguments as support: he says that the jury, by failing to report Juror 2's

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

comments, demonstrated it was incapable of following the Court's instructions and therefore a mistrial was warranted; and he contends that the District Court failed to adequately investigate the alleged juror misconduct.[2]  Both arguments are meritless.

We review "a district court's investigation of juror misconduct, as well as its denial of a mistrial, … for abuse of discretion."  *United States v. Claxton*, 766 F.3d 280, 297 (3d Cir. 2014).  "[I]t is a generally accepted principle" that jurors may not engage in premature deliberations.  *United States v. DiSalvo*, 34 F.3d 1204, 1224 (3d Cir. 1994) (citation omitted).  When allegations of juror misconduct arise, district courts enjoy "wide latitude" in their handling of the issue, especially when the alleged misconduct involves intra-jury communications.  *United States v. Bertoli*, 40 F.3d 1384, 1393-94 (3d Cir. 1994).  Moreover, "[a]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court."  *United States v. Cox*, 324 F.3d 77, 87 (2d Cir. 2003) (citation omitted).

There was no abuse of discretion here.  The District Court questioned each member of the jury about whether he or she had heard any other juror discussing the case.  For those that had, the Court asked whether the comments would affect their ability to remain impartial.  They uniformly responded that the comments would not affect their impartiality.  As the District Court rightly concluded, disbelieving the jurors – both those who said they had not overheard any comments and those who said they could remain

---

[2] The government argues that Parker forfeited these arguments by failing to raise them below.  Parker disagrees.  We need not decide whether there was a forfeiture because Parker's arguments fail on the merits.

5

impartial – would, under these circumstances, be inappropriate. The Court had allowed the parties to question the jurors. Based on that investigation, the Court dismissed Juror 2 and, at Parker's request, gave a curative instruction to the jury. Those actions were well within the Court's discretion, and nothing further was required.

Next, Parker contends that he was denied the right to a fair trial based on the government's statements during closing argument. "We review a district court's decision not to grant a mistrial on the grounds that the prosecutor made improper remarks in closing argument for abuse of discretion, and, if error is found, we apply harmless error analysis." *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996) (citation omitted). As the government correctly argues, the prosecutor here did nothing more than reference testimony in the record and ask the jury to draw its own inferences about what it showed. That was not improper, particularly given that Parker himself, during cross-examination, was the first to ask the witness whether the witness had been bribed. *See United States v. Fulton*, 837 F.3d 281, 310 n.228 (3d Cir. 2016) ("It is well-settled that the Government is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." (internal quotation marks and citation omitted)). Nor is there any indication that the government's statements prejudiced Parker. *See United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) ("[W]e will reverse if we conclude that the prosecutor's remarks, taken

6

in the context of the trial as a whole, prejudiced the defendants.").  The Court did not abuse its discretion in denying Parker's motion.

Third, as to all six counts of conviction, Parker challenges the sufficiency of the evidence regarding his mental state.  "Sufficiency of the evidence is a question of law, subject to plenary review."  *United States v. Moyer*, 674 F.3d 192, 206 (3d Cir. 2012).  But "[w]e review 'the evidence in the light most favorable to the Government,' afford 'deference to a jury's findings,' and draw 'all reasonable inferences in favor of the jury verdict.'"  *Id.* (citation omitted).  "We will overturn the verdict 'only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt.'"  *Id.* (citation omitted).  Here, all six counts required the government to prove Parker acted with a particular criminal intent.[3]  Parker argues that the evidence showed he had no intent but to comply with the investment contracts and that he erroneously, but in good faith, believed his "investment" income was non-taxable.  He is mistaken about the evidence, to put it mildly.

The government overwhelmingly showed that Parker promised his victims he would invest their money but instead used it for himself.  Parker acknowledged that his victims did not know what was happening and that they believed their money had been invested.  The evidence showed Parker used multiple bank accounts at different banks to

---

[3] To establish securities fraud, the government had to prove that Parker acted willfully, knowingly, and with the intent to defraud.  15 U.S.C. §§ 78j(b), 78ff(a); 17 C.F.R. § 240.10b-5.  To establish mail fraud, the government had to prove that Parker acted with the intent to defraud.  18 U.S.C. § 1341.  And to establish the filing of a false tax return, the government had to prove that Parker acted willfully.  26 U.S.C. § 7206(1).

deposit the money and frequently moved it around, using cash, checks, and gift cards to pay his personal expenses. Contrary to Parker's suggestion, there was no indication that the funds were personal loans to Parker that might be non-taxable, and Parker should have claimed the money as income. And, despite having claimed income from PFS in 2005, Parker never told his accountant about his work at PFS from 2009 onward. Nor did he disclose that work to Edward Jones. Tellingly, when confronted with the evidence against him, Parker told federal agents that they had "nailed it[.]" (App. at 861.) Based on the evidence, a reasonable juror could certainly find beyond a reasonable doubt that Parker had committed each offense with the requisite criminal intent.

Finally, Parker contends that his sentence is substantively unreasonable because the District Court improperly considered, when determining his sentence, the good time credits and halfway-house release he might receive.[4] We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc). Parker bears the burden of demonstrating that "no

---

[4] The government argues that the error Parker alleges is, in fact, a procedural error, not a substantive one. But Parker is adamant that his claimed error is a challenge to the substantive reasonableness of his sentence. It suffices to say that any challenge to the procedural reasonableness of his sentence has been forfeited. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (treating arguments not raised in the appellants' opening brief as forfeited); *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (discussing the "well-established" rule that arguments not raised below are waived on appeal).

reasonable sentencing court would have imposed the same sentence on [him] for the reasons the district court provided." *Id.* He has failed to meet that burden.

After correctly calculating the guidelines range and considering the factors in 18 U.S.C. § 3553(a), the District Court determined that a within-guidelines sentence was appropriate. The 87-month sentence it imposed was at the very bottom of the guidelines range. We may presume the sentence is reasonable, *Peugh v. United States*, 569 U.S. 530, 537 (2013), and Parker offers no reason for us to conclude otherwise. He certainly has not shown that "no reasonable sentencing court would have imposed the same" bottom-of-the-guidelines sentence based on the District Court's careful consideration of the § 3553(a) factors here. *Tomko*, 562 F.3d at 568.

## III. CONCLUSION

For the foregoing reasons, we will affirm the sentence imposed by the District Court.

9